**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

**TEXAS MP3 TECHNOLOGIES, LTD.,**

       **Plaintiff,**

  **vs.**

**SAMSUNG ELECTRONICS CO., LTD.,**
**SAMSUNG ELECTRONICS AMERICA,**
**INC., SANDISK CORPORATION, and**
**APPLE COMPUTER, INC.,**

      **Defendants.**

**CIVIL ACTION**

**2:07-CV-00052-TJW**

**JURY TRIAL**

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT APPLE'S MOTION TO STAY**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

III.   ARGUMENT ...................................................................................................... 3

      A.    Apple's Motion is Premature, as the PTO Has Not Yet Decided to Reexamine the '417 Patent. ..................................................................3

      B.    Even If the PTO Ultimately Decides to Reexamine the '417 Patent, the Court Should Not Stay This Litigation. ...................................................4

            1.    Texas MP3 Would Be Prejudiced By the Requested Stay. ....................... 5

            2.    A Stay Would Not Simplify the Issues at Trial. ........................................ 7

            3.    The Stage of Litigation Does Not Favor a Stay....................................... 10

IV.   CONCLUSION.................................................................................................. 11

# TABLE OF AUTHORITIES

## CASES

*Anascape, Ltd. v. Microsoft Corp.*,
   475 F. Supp. 2d 612 (E.D. Tex. 2007) ............................................................ 6, 7

*Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-CV-364-TJW,
   2007 U.S. Dist. LEXIS 12973 (E.D. Tex. Feb. 26, 2007) ....................................... 3, 5, 6, 10

*Castanho v. Jackson Marine, Inc.*,
   484 F. Supp. 201 (E.D. Tex. 1979) ................................................................ 4

*Echostar Techs. Corp. v. TiVo, Inc.*, No. 5:05-CV-81-DF-CMC,
   2006 U.S. Dist. LEXIS 48431 (E.D. Tex. July 14, 2006) .................................... 9

*Gladish v. Tyco Toys, Inc.*, No. S-92-CV-1666,
   1993 U.S. Dist. LEXIS 20211 (E.D. Cal. Sept. 16, 1993) .................................... 6

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966) ...................................................................................... 8

*IMAX Corp. v. In-Three, Inc.*,
   385 F. Supp. 2d 1030 (C.D. Cal. 2005) ............................................................ 4

*In re Fine*,
   837 F.2d 1071 (Fed. Cir. 1988) .................................................................... 7

*In re Gorman*,
   933 F.2d 982 (Fed. Cir. 1991) ...................................................................... 7

*Kidd v. Southwest Airlines, Co.*,
   891 F.2d 540 (5th Cir. 1990) ........................................................................ 10

*KSR Int'l Co. v. Teleflex Inc.*,
   127 S. Ct. 1727 (U.S. 2007) .......................................................................... 7

*Landis v. North American Co.*,
   299 U.S. 248 (1936) .................................................................................... 4

*Motorola Inc. v. STMicroelectronics, N.V.*,
   No. 1:03-CV-407-MAC-KFG (E.D. Tex. June 29, 2004) .................................... 10

*NTP, Inc. v. Research in Motion, Ltd.*,
   397 F. Supp. 2d 785 (E.D. Va. 2005) ............................................................ 4, 6

*Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*, No. 3:05-CV-
  1560-G, 2006 U.S. Dist. LEXIS 64698 (N.D. Tex. Sept. 11, 2006) .................................... 10

*Soverain Software LLC v. Amazon.com, Inc.*,
  356 F. Supp. 2d 660 (E.D. Tex. 2005) ................................................................................. 10

*Symbol Techs., Inc. v. Metrologic Instruments, Inc.*,
  450 F. Supp. 2d 676 (E.D. Tex. 2006) ................................................................................. 11

*Translogic Tech., Inc. v. Hitachi, Ltd.*,
  404 F. Supp. 2d 1250 (D. Ore. 2005) ..................................................................................... 4

*Tyco Healthcare Group, L.P. v. Medrad, Inc.*, No. 1:04-CV-773,
  2005 U.S. Dist. LEXIS 42869 (S.D. Ohio Mar. 17, 2005) ..................................................... 4

*Unidisco, Inc. v. Schattner*, No. HM80-2617,
  1981 U.S. Dist. LEXIS 14890 (D. Md. June 15, 1981) .......................................................... 4

*Viskase Corp. v. Am. Nat'l Can Co.*,
  261 F.3d 1316 (Fed. Cir. 2001) ............................................................................................... 4

I.      **INTRODUCTION**

Plaintiff Texas MP3 Technologies, Ltd. ("Texas MP3") opposes the motion of Defendant Apple Computer, Inc. ("Apple") to stay this case pending the completion of a prospective *inter partes* reexamination of U.S. Patent No. 7,065,417 (the "'417 patent") by the United States Patent & Trademark Office ("PTO").  [Dkt. No. 59].

As an initial matter, Apple's motion is premature.  Seeking to delay this litigation before its P.R. 3-3 and 3-4 disclosure obligations come due next month, Apple asks the Court to grant a stay pending an *inter partes* reexamination that the PTO has not yet decided to take up.  The Court should thus deny this motion on the ground that, at this point, whether the PTO will grant Apple's request for reexamination is speculative.

Even if the PTO should ultimately decide to reexamine the '417 patent, however, there are compelling reasons why this litigation should not be stayed.  First, evidence submitted by Apple indicates that an *inter partes* reexamination can be expected to take far longer to complete than an *ex parte* reexamination.  And when Apple's right to appeal the results of the prospective *inter partes* reexamination is taken into account, it appears likely that a stay pending the completion of this process would last more than five years.  Such a delay in the resolution of its claims poses a real threat of substantial prejudice to Texas MP3.  Second, it is unlikely that waiting these many years for the results of any reexamination will substantially simplify the issues for trial in this case.  Apple's obviousness-based argument to the PTO presents a classic example of "hindsight reconstruction"—a mode of analysis repeatedly rejected by the Federal Circuit.  Texas MP3 is justifiably confident that this argument will not lead to the cancellation of the '417 patent's claims.  In any event, such an obviousness-based validity challenge to the patent-in-suit is well within the competence of this Court to resolve accurately, and expeditiously, without input from the PTO.

Staying this case would be at odds with this Court's precedent, would severely undermine Texas MP3's right to a timely resolution of its claims, would encourage other accused infringers

to follow Apple's lead in filing for reexamination as a dilatory tactic, and would stagnate the efficient patent docket for which this District is well known.  Apple's motion to stay should be denied.

## II.     BACKGROUND

### Apple is Sued for Infringement of the '417 Patent . . .

Texas MP3 filed this patent-infringement suit on February 16, 2007, against Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. (collectively, "Samsung"), SanDisk Corporation ("SanDisk"), and Apple.  [Dkt. No. 1].  At issue is the '417 patent, entitled "MPEG Portable Sound Reproducing System and A Reproducing Method Thereof."  As its title suggests, the patent is directed to portable MP3 players such as those made and sold by Defendants.  [*See* Dkt. No. 1].

Pursuant to the Court's Order of July 10, Texas MP3 disclosed its preliminary infringement contentions and produced its corresponding documents to Defendants on July 25. [*See* Dkt. Nos. 42 and 54]; *see also* Local Rule P.R. 3-1 and 3-2.  The same Order required Apple, Samsung, and SanDisk to disclose their invalidity contentions and produce their corresponding documents to Texas MP3 by September 10.  [*See* Dkt. No. 42]; *see also* Local Rule P.R. 3-3 and 3-4.  On August 1—the same day it filed the present motion to stay—Apple moved, without opposition, to extend its P.R. 3-3 and 3-4 disclosure deadlines to September 24. [*See* Dkt. No. 58].

### . . . Then Requests Reexamination and Moves for an Indefinite Stay.

While seeking to postpone the required disclosure of its invalidity contentions in this Court, Apple has been busy crafting those contentions for use in another forum—Apple filed its request for *inter partes* reexamination of the '417 patent with the PTO on July 12, two days after this Court's Order requiring Apple and the other Defendants to make their P.R. 3-3 and 3-4 disclosures.  [*See* Dkt. No. 59-4 at 2].  Significantly, the reexamination request is based exclusively on an obviousness argument.  [*See id.* at 11].  That is, Apple makes no argument to

the PTO that the invention disclosed in the '417 patent was anticipated by any printed publication prior art reference; instead it argues only that the MP3-related invention should have been considered obvious when viewed in the light of three patents layered in various combinations over a user's manual for an outdated Sony CD player.  [*See* Dkt. No. 59-4].[1] Although most requests for *inter partes* reexamination are ultimately granted, [*see* Dkt. No. 59 at Exh. B], Apple's request has not yet been acted upon by the PTO.  Nevertheless, before the PTO has decided whether or not to reexamine the '417 patent, Apple now moves the Court for an indefinite stay of this litigation pending completion of this prospective *inter partes* reexamination.

## III.    ARGUMENT

### A.    Apple's Motion is Premature, as the PTO Has Not Yet Decided to Reexamine the '417 Patent.

As an initial matter, Apple's motion is premature.  Apple moves the Court for an indefinite stay of this litigation pending the completion of a PTO process that may never begin. While it is true that the great majority of requests for *inter partes* reexamination are ultimately granted, some are denied.  [*See* Dkt. No. 59 at Exh. B].  At this point, therefore, whether there will be a reexamination of the '417 patent at all is speculative—and cases should not be stayed on speculative grounds.  *See*, *e.g.*, *Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-CV-364-TJW, 2007 U.S. Dist. LEXIS 12973, at *5 (E.D. Tex. Feb. 26, 2007) (Ward, J.) (noting that speculative facts do not support granting a stay).  If for no other reason than that it is premature, therefore, the Court should deny Apple's motion to stay pending the completion of a currently speculative reexamination.

---

[1] The three principal patents cited in Apple's reexamination request include U.S. Patent Nos. 5,914,941 ("Portable Information Storage/Playback Apparatus Having a Data Interface"), 6,105,142 ("Intelligent Power Management Interface for Computer System Hardware"), and 5,724,482 ("Smart Tray for Audio Player").  [*See* Dkt. No. 59-4 at 16-18, 83, 99; Dkt. No. 59-5 at 29].  The user's manual cited by Apple provides the operating instructions for a 1996 Sony Compact Disk Compact Player.  [*See* Dkt. No. 59-4 at 56-81].

**B.     Even If the PTO Ultimately Decides to Reexamine the '417 Patent, the Court Should Not Stay This Litigation.**

Even if the PTO grants Apple's request for reexamination, however, the great weight of the relevant factors counsels denying the motion to stay.

"Resolution of a motion to stay must begin with consideration of the landmark decision in *Landis v. North American Co.*, 299 U.S. 248 (1936)." *Unidisco, Inc. v. Schattner*, No. HM80-2617, 1981 U.S. Dist. LEXIS 14890, at *13 (D. Md. June 15, 1981).  In *Landis*, the Supreme Court held that one moving "for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." 299 U.S. at 255; *see also Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201, 209 (E.D. Tex. 1979); *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005).  To that end, the "burden is squarely on the party seeking the stay to show that there is a pressing need for a delay."  *Castanho*, 484 F. Supp. at 209; *see also Tyco Healthcare Group, L.P. v. Medrad, Inc.*, No. 1:04-CV-773, 2005 U.S. Dist. LEXIS 42869, at *24 (S.D. Ohio Mar. 17, 2005).

While the Court has discretion to grant a stay if warranted by the particular circumstances at play, there is absolutely no obligation "to stay judicial resolution in view of [PTO] reexaminations."  *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001); *see also Translogic Tech., Inc. v. Hitachi, Ltd.*, 404 F. Supp. 2d 1250, 1254 (D. Ore. 2005); *NTP, Inc. v. Research in Motion, Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va. 2005).  Instead, the Court should "tread carefully" in determining whether a stay is necessary, "since a party has a right to a determination of its rights and liabilities without undue delay."  *Tyco Healthcare Group*, 2005 U.S. Dist. LEXIS 42869, at *24; *see also Castanho*, 484 F. Supp. at 209 ("Because each party to a lawsuit has a right to an expe[ditious] determination of his claim, . . . the district court must weigh competing interests in order to reach a fair decision.").  Many courts focus on three factors when determining whether the movant has demonstrated a pressing need for delay pending a

patent reexamination:   "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Biax*, 2007 U.S. Dist. LEXIS 12973, at *3 (citation omitted).  On balance, consideration of these three factors strongly counsels denying a stay in this case.

### 1.      Texas MP3 Would Be Prejudiced By the Requested Stay.

In *Biax*, this Court held that "the potential delay for an indefinite period" pending an *ex parte* reexamination "would likely prejudice" the patentee plaintiff.  2007 U.S. Dist. LEXIS 12973, at *4.  Evidence in that case reflected an average *ex parte* reexamination pendency of 22.6 months, with the possibility of an additional 24 months for appellate review.  *See id*. Evidence submitted by Apple reflects a substantially bleaker picture with respect to the potential delay pending an *inter partes* reexamination such as the one Apple has requested.  The PTO chart attached as Exhibit B to Apple's motion, for example, indicates that the median pendency of *inter partes* reexaminations is 29.7 months.   [Dkt. No. 59 at Exh. B].   That statistic is misleading, however, as it corresponds only to the <u>seven</u> *inter partes* reexaminations that were completed in the first <u>seven years</u> that the process was available.  [*Id.*].  The chart shows that <u>twenty-six</u> *inter partes* reexaminations were filed by fiscal year 2003, and that the substantial majority of those requests were still not resolved well into fiscal year 2007.  [*See id.*].  The evidence indicates, therefore, that an *inter partes* reexamination can be expected to take well over three years in the PTO.  [*See id.*].[2]

This bleak picture darkens further when the appellate rights of those requesting *inter partes* reexaminations are taken into account.  For in the *ex parte* context, only the patentee has

---

[2]  In addition, the chart reveals that requests for *inter partes* reexamination have risen every year, with the filings in fiscal year 2006 more than tripling those of fiscal year 2003.  It thus seems reasonable to conclude that *inter partes* reexaminations undertaken in 2007 will have even longer pendencies than those undertaken in 2003.  [*See* Dkt. No. 59 at Exh. B].

the right to appeal an adverse decision of the PTO.  *See* 35 U.S.C. §306.  Thus, the delay attendant with appellate review can be triggered only when the PTO rejects some or all of the patent's claims during an *ex parte* reexamination.[3]  In an *inter partes* reexamination, on the other hand, both the patentee <u>and the requester</u> have the right to appeal an adverse decision.  *See* 35 U.S.C. §315(b).  The delay attendant with appellate review is thus likely to be triggered regardless of the PTO's ultimate decision on reexamination.  This means that if, after a multi-year reexamination process, the PTO confirms all claims of the '417 patent, Apple will be entitled to engage in another multi-year process appealing the PTO's decision to the Board of Patent Appeals and beyond.  Assuming, therefore—as Texas MP3 fully anticipates will be the case—that every claim of the '417 patent is ultimately confirmed, completion of the *inter partes* reexamination process can realistically be expected to take more than five years.  "This factor weigh[ed] strongly against a stay" in *Biax*; it should weigh even more strongly against a stay in this case.  2007 U.S. Dist. LEXIS 12973, at *5.

In addition to causing the "fundamental harm of delaying final resolution," *see id.* at *4, staying this case for an indefinite period of time threatens to prejudice Texas MP3's ability to fairly prosecute its patent-infringement action when the stay is finally lifted.  Courts have recognized, for example, that "crucial witnesses are more likely to be located if discovery is allowed to proceed now, rather than later."  *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007) (Clark, J.).  Given the very real possibility that "witnesses may become unavailable, their memories may fade, and evidence may be lost while the PTO proceeding takes place," *Gladish v. Tyco Toys, Inc.*, No. S-92-CV-1666, 1993 U.S. Dist. LEXIS 20211, at *5-*6 (E.D. Cal. Sept. 16, 1993), Texas MP3 would "be at a severe tactical disadvantage if the entire case were stayed" pending a reexamination process that might well

---

[3] Even so, many courts have given weight to the possibility of additional appellate delay in the *ex parte* context.  *See Biax*, 2007 U.S. Dist. LEXIS 12973, at *4; *NTP, Inc.*, 397 F. Supp. 2d at 788 ("Reality and past experience dictate that several years might very well pass from the time when a final office action is issued by the PTO to when the claims are finally and officially 'confirmed' after appeals.").

take more than five years to complete.  *See Anascape*, 475 F. Supp. 2d at 617.

**2.      A Stay Would Not Simplify the Issues at Trial.**

Contrary to Apple's generalized and conclusory assertions, [*see* Dkt. No. 59-1 at 9], there is no good reason to think that granting its motion will result in simplifying the issues at trial in this case.  Apple highlights three circumstances in which a stay pending reexamination can lead to issue simplification at trial:  (1) the patent's claims may be "cancelled"; (2) the patent's claims may be "significantly narrowed"; or (3) the PTO's "expert analysis" may shed needed light on the prior art.  [*See id.*].  A closer look at Apple's reexamination request, however, suggests that—even if the PTO grants Apple's request—none of these three circumstances is likely to come to pass here.

As to the first circumstance, Texas MP3 is confident that, if the PTO does decide to reexamine the '417 patent, the patent's claims will not ultimately be cancelled.  Apple's request for reexamination turns on the argument that the technology disclosed in the '417 patent—and used in Apple's accused MP3-related products—is and was entirely obvious.  [*See* Dkt. No. 59-4 at 11-15].  To support this argument, Apple suggests that it would have been obvious to combine, in various ways, various features described in three unrelated patents and the user's manual for an outdated Sony CD player.  [*See id.* at 11-48].  This argument presents a classic example of "hindsight reconstruction"—using the '417 patent claims "as a template," Apple has "select[ed] elements from [various] references to fill the gaps."  *In re Gorman*, 933 F.2d 982, 987 (Fed. Cir. 1991).  The Federal Circuit has made clear that "[i]t is impermissible" to engage in this method of analysis when considering whether an invention would have been obvious.  *Id.*; *see also In re Fine*, 837 F.2d 1071, 1075 (Fed. Cir. 1988) ("One cannot use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to depreciate the claimed invention.").  The Supreme Court has also recently warned against "the distortion caused by hindsight bias."  *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1742 (U.S. 2007).  Given Apple's hindsight reconstruction of the '417 patent's claims, and taking into account other

7

strong indicia of nonobviousness—such as, for example, the commercial success of portable MP3 players, *see Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)—Texas MP3 is justifiably confident that the PTO will not cancel the claims of the '417 patent on these grounds.

As to the second circumstance, a substantial narrowing of the '417 patent's claims during any prospective reexamination is also unlikely.  A quick glance at the patent's independent claims confirms that they are not drafted in overly broad terms, but instead already contain numerous and reasonably specific limitations.  Claim 1 of the '417 patent, for example, takes up thirty-four lines of text in one column, and an additional eight lines of text in another.  [*See* Dkt. No. 59-5 at 55-56].  The Examiner should not be expected to find that this claim can only be confirmed after the inclusion of a substantial number of new and additional limitations.

With regard to both of these points, Apple supports its argument by citing to its attached PTO chart, which, according to Apple, shows that "in 86% of *inter partes* reexaminations, all the claims are cancelled."  [Dkt. No. 59-1 at 9].  Once again, of course, that figure reflects only the seven *inter partes* reexaminations completed in the first seven years that the process was available.  [*See* Dkt. No. 59 at Exh. B].  A sample size of seven is simply too small to be significant.[4]  It is likely more fair—and surely more relevant to the present motion—to focus on the fact that, as of December 2006, the 168 *inter partes* reexaminations undertaken by the PTO had resulted in only six certificates canceling claims.  [*See id.*].[5]  As explained above, these statistics present a powerful argument for denying Apple's motion to stay, not for granting it.

As to the third circumstance, there is no reason to think that the Court would substantially benefit from any "expert analysis" that the PTO might provide during the prospective reexamination.  The invention of the '417 patent is not technically complex, and neither is the art

---

[4]  The same application of these statistics, for example, would show a 0% chance that any patent claims will be modified during an *inter partes* reexamination.  [*See* Dkt. No. 59 at Exh. B].

[5] This represents what might be considered a real-time, actual-cancellation rate of less than 4%.

that Apple has cited to the PTO.  Consider, for example, that Apple's primary prior art reference is the user's manual for a 1996 Sony CD player.  [*See* Dkt. No. 59-4 at 19-23].  That CD-player manual, it should be noted, does not support Apple's assertion that the '417 patent's MP3-player technology was obvious.  But regardless of its ultimate relevance, that manual was designed to be fully comprehensible to the average user of such a CD player, and the Court will have no need of the PTO's technical expertise to navigate it.  The other references cited by Apple also pose no threat of confusing the Court.  In addition, the overarching question presented to the PTO on reexamination—whether the invention disclosed in the '417 patent was obvious—is one that is well within this Court's competence to answer, both accurately and efficiently, without the PTO's input.

Apple cites *Echostar Techs. Corp. v. TiVo, Inc.*, No. 5:05-CV-81-DF-CMC, 2006 U.S. Dist. LEXIS 48431, at *3 (E.D. Tex. July 14, 2006) (Craven, J.), for the proposition that an *inter partes* reexamination, with its requester-estoppel effect, is more likely to result in issue simplification than an *ex partes* reexamination.  [*See* Dkt. No. 59-1 at 7].  There are at least three reasons, however, why the analysis in *Echostar* does not hold in this case.  First, as the court in *Echostar* noted, the requester-estoppel effect is most relevant when the reexamination "is proceeding with the same parties" opposing each other in the pending litigation.  *See* 2006 U.S. Dist. LEXIS 48431, at *3.  That was the case in *Echostar*; it is not the case here.  In addition to Apple, this litigation also includes Samsung and SanDisk—parties that have not requested an *inter partes* reexamination.[6]  Second, whatever the likely issue-simplification impact of an *inter partes* reexamination in the abstract, the analysis above suggests that there is little reason to expect such simplification in this case.  Third, the court in *Echostar* did not address the potential, described above, for a substantially longer delay in the *inter partes* context.  Even if the new procedure may be more likely to result in issue simplification in some circumstances, that

[6] SanDisk, in fact, has filed a response to Apple's motion indicating that it takes no position regarding the merits of the motion to stay, and emphasizing that it is not a party to the *inter partes* reexamination requested by Apple.  [Dkt. No. 68-1].

possibility must be weighed against the far greater threat that a stay pending the *inter partes* procedure poses to the timely and efficient resolution of patent-infringement claims.

Texas MP3 therefore urges the Court to find, as it did in *Biax*, that any remote possibility that the requested reexamination will result in simplification of the issues at trial "is speculative and does not support a stay."  2007 U.S. Dist. LEXIS 12973, at *5; *see also Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (Davis, J.) (noting that the practice of granting stays "during reexamination because some of the relevant claims may be affected" would "not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination").

### 3.    The Stage of Litigation Does Not Favor a Stay.

This case is in its early stages, but that fact in itself is no reason to grant a stay.  *See Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*, No. 3:05-CV-1560-G, 2006 U.S. Dist. LEXIS 64698, at *11 (N.D. Tex. Sept. 11, 2006) ("Although the advanced nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference—that a suit in the early stages should weigh heavily in favor of a stay—is not true."); *see also Biax*, 2007 U.S. Dist. LEXIS 12973, at *6 (denying stay where case was in its early stages).  Any other rule would send the unfortunate message to patent infringers—a message Apple has apparently received—that, whenever they are sued for infringement, they may secure a multi-year reprieve from accounting for their infringing activities simply by filing a quick request for reexamination with the PTO.

\*        \*        \*

Texas MP3, "as plaintiff, is the master of its claims and the forum in which it chooses to assert those claims."  *Motorola Inc. v. STMicroelectronics, N.V.*, No. 1:03-CV-407-MAC-KFG, Dkt. No. 89 (E.D. Tex. June 29, 2004) (Radford, J.); *see also Kidd v. Southwest Airlines, Co.*, 891 F.2d 540, 544-45 (5th Cir. 1990).  And Texas MP3 has chosen to litigate this patent-infringement suit in this District—a District with its own patent-specific procedural rules and a

reputation for resolving patent disputes accurately and efficiently.  In filing its request for reexamination with the PTO and then moving quickly for an indefinite stay, Apple seeks to delay this suit, prolong infringement of the '417 patent, and effectively lock Texas MP3 out of its chosen forum for up to five years or more.  Granting the requested stay thus would undermine Texas MP3's right to choose its forum, would undermine each party's right to a timely resolution of this dispute, and would undermine the important purposes for which this District implemented its patent rules.  *See, e.g.*, *Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 450 F. Supp. 2d 676, 679 (E.D. Tex. 2006) (Davis, J.) (discussing "this district's efficient and expeditious management of patent cases").

## IV.   CONCLUSION

For the foregoing reasons, Texas MP3 respectfully requests that the Court deny Apple's motion to stay pending the completion of a prospective *inter partes* reexamination.


Dated: August 14, 2007                              Respectfully submitted,


                                                    /s/ Mike McKool          _
                                                    Mike McKool, Jr.
                                                    Lead Attorney
                                                    State Bar No. 13732100
                                                    mmckool@mckoolsmith.com
                                                    Scott R. Jacobs
                                                    State Bar No. 10521550
                                                    sjacobs@mckoolsmith.com
                                                    **McKOOL SMITH P.C.**
                                                    300 Crescent Court, Suite 1500
                                                    Dallas, Texas  75201
                                                    Telephone:  (214) 978-4000
                                                    Telecopier:  (214) 978-4044

                                                    Sam F. Baxter
                                                    State Bar No. 01938000
                                                    sbaxter@mckoolsmith.com
                                                    **McKOOL SMITH P.C.**
                                                    505 E. Travis, Suite 105

Marshall, Texas  75670
Telephone:  (903) 923-9000
Telecopier:  (903) 923-9099

Travis Gordon White
State Bar No. 21333000
gwhite@mckoolsmith.com
Gretchen K. Milne
State Bar No. 24055979
gmilne@mckoolsmith.com
**McKOOL SMITH P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas  78701
Telephone:  (512) 692-8700
Telecopier:  (512) 692-8744

Robert M. Parker
State Bar No. 15498000
rmparker@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone:  (903) 531-3535
Telecopier:  (903) 533-9687

**ATTORNEYS FOR PLAINTIFF
TEXAS MP3 TECHNOLOGIES, LTD.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on this the 14th day of August, 2007.  Local Rule CV-5(a)(3)(A).

      /s/ Sam Baxter

Sam Baxter