**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **TEXAS MP3 TECHNOLOGIES, LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION** |
| | § | |
| **vs.** | § | **2:07-cv-00052-CE** |
| | § | |
| **SAMSUNG ELECTRONICS CO., LTD.,** | § | |
| **SAMSUNG ELECTRONICS AMERICA,** | § | **JURY TRIAL** |
| **INC., SANDISK CORPORATION, and** | § | |
| **APPLE COMPUTER, INC.** | § | |
| | § | |
| **Defendants.** | § | |

# TEXAS MP3 TECHNOLOGIES, LTD.'S REPLY BRIEF ON CLAIM CONSTRUCTION

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................ 1

II. PROPOSED CONSTRUCTIONS FOR THE '417 PATENT ........................................ 1

A. "input" ........................................ 1

1. Samsung Imports the "Switch" Limitation from the Preferred Embodiment ........................................ 1

2. Samsung Improperly Requires "Physical" Inputs ........................................ 3

B. "a plurality of inputs, including a forward input, a reverse input, a play control input, and a random input" and "a plurality of inputs, including a forward input, a reverse input, a play control input, and a repeat input" ........................................ 4

1. Samsung Creates the "Separate" Limitation from Whole Cloth ........................................ 4

2. Samsung Misstates the Role of Dependent Claims ........................................ 5

C. "stops playing the fourth selection" ........................................ 6

D. "selected mode of operation" ........................................ 7

III. INDEFINITENESS OF THE MPEG TERMS ........................................ 8

IV. CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*,
341 F.3d 1332 (Fed. Cir. 2003)........................................................................................8, 9

*MediaTek, Inc. v. Sanyo Elec. Co.*,
513 F. Supp. 2d 778 (E.D. Tex. 2007)...................................................................................9, 10

*Peer Commc'ns Corp. v. Skype Techs. SA*,
No. 6:06CV370, 2008 U.S. Dist. LEXIS 92683..........................................................................6

## TABLE OF EXHIBITS[1]

| | |
|---|---|
| Exhibit A | United States Patent No. 7,065,417 |
| Exhibit B | Comparison Chart of Texas MP3's and Defendants' Proposed Constructions for the Disputed Terms |
| Exhibit C | WEBSTER'S NEW WORLD COLLEGE DICTIONARY at 697 |
| Exhibit D | Bates-Labeled Excerpts of File History for United States Patent No. 7,065,417 |
| Exhibit E | USPTO Search Results |
| Exhibit F | Revised Comparison Chart of Texas MP3's and Samsung's Proposed Constructions for the Disputed Terms |
| Exhibit G | WEBSTER'S NEW WORLD COLLEGE DICTIONARY at 1216 |

[1] Exhibits A–E are attached to Texas MP3's Opening Brief on Claim Construction. Exhibits F–G are attached to this Reply Brief on Claim Construction.

# I. INTRODUCTION

Pursuant to P.R. 4-5(c) and the Court's October 2, 2008 Docket Control Order, Texas MP3 Technologies, Ltd. ("Texas MP3") respectfully submits this brief on the proper construction of disputed claim terms of the '417 Patent in reply to Defendants Samsung Electronics Co. Ltd. and Samsung Electronics America, Inc.'s (collectively "Samsung") Response Brief on Claim Construction ("Response Brief"). Texas MP3 also submits for the Court's convenience a revised chart logically grouping the disputed claim terms and providing, side-by-side, the parties' respective proposed constructions of those terms. Exh. F.

# II. PROPOSED CONSTRUCTIONS FOR THE '417 PATENT

## A. "input"

| Term | Texas MP3's Construction | Samsung's Proposal |
|---|---|---|
| input | No construction necessary.[2]<br>If a construction is necessary, "a selector for inputting a signal" | physical switch |

### 1. Samsung Imports the "Switch" Limitation from the Preferred Embodiment

Samsung does not dispute that the '417 specification describes and illustrates the inputs as an "information selector." Response Brief at 7. Samsung, however, looks to the preferred embodiment for a narrower disclosure of the inputs in an improper attempt to limit the claims. Response Brief at 5. The excerpt of the '417 specification cited by Samsung teaches *details* of the preferred embodiment of the information selector that are not limitations of the claims:

[2] Despite Samsung's statement to the contrary, Response Brief at 3, Texas MP3 contends that "input" does not need to be construed. Parties' Compliance with Patent Rule 4-3 (Dkt. No. 145) at 7, fn. 1. Texas MP3 provides the above construction as the proper construction in the event the Court construes the term.

> In more detail, the information selector 300 comprises a forward switch…; a reverse switch…; a play/stop switch…; a repeat switch…; and a random switch….” Exh. A (’417 Patent) at 4:4–24 (emphasis added).

Samsung’s attempt to import a limitation from the preferred embodiment and restrict an input to a switch should be rejected.[3]

Samsung argues that Texas MP3’s construction “merely restates the term itself with the addition of the vague term ‘selector’….” Response Brief at 3. Texas MP3’s construction and inclusion of the term “selector” follows from the ’417 specification which explains that the various input signals that control the operation of the portable audio device are produced by using an information *selector*. Texas MP3 Opening Brief at 9. The inventors explained that “[t]he information selector 300 is realized through various predetermined keys operated by the user, and outputs electrical signals according to the user selections[.]” Exh. A (’417 Patent) at 3:65–4:3 (emphasis added); *see also* 5:49–6:46; Texas MP3 Opening Brief at 9. The specification also illustrates the information *selector* 300 in Figure 1. Exh. A (’417 Patent) at FIG. 1; *see also* Texas MP3 Opening Brief at 9. Furthermore, a “selector” is a well-understood term meaning “a person or thing that selects.” Exh. G (WEBSTER’S NEW WORLD COLLEGE DICTIONARY (1997)) at 1216. Thus, Texas MP3’s construction of “input” as “a selector for inputting a signal” is compelled by the ’417 specification and is not vague or ambiguous.

[3] Samsung represents in its Response Brief that the term “switch” has a very broad meaning. Response Brief at 5–6. Applying Samsung’s definition, a switch is anything that inputs a signal. Response Brief at 5–6. Specifically, Samsung represents that “the term ‘switch’ is a broad electrical term” that covers anything that “allow[s] the user to select between two different states.”

**2. Samsung Improperly Requires "Physical" Inputs**

Samsung acknowledges that "the specification or claims do not explicitly label the inputs as 'physical'[.]" Response Brief at 4. In fact, nothing in the intrinsic record explicitly or implicitly requires that an input be "physical." Texas MP3 Opening Brief at 11. As such, Samsung asks the Court to create a claim limitation without any basis to do so.

Samsung's Response Brief initially represents that "physical" merely reflects the apparatus nature of the claims. Response Brief at 4. Later in its brief, the true limitation Samsung intends with "physical" is revealed—in Samsung's view software is not physical. Response Brief at 7 ("inputs [must] be 'physical,' not intangible like a software construct."). This view is nonsensical—software is not a metaphysical state of being, but rather a well-known part of many modern-day machines. Moreover, nothing in the claim language or specification precludes the "inputs" from being defined in software. Samsung argues that because some of the claim elements are not software constructs, then all of the elements must not be software constructs. Response Brief at 4. However, Samsung provides no evidence from the intrinsic record suggesting that other claim elements cannot be realized through software. Samsung's proposal is a transparent attempt to avoid infringement through an improper claim construction and should be rejected.

**B. "a plurality of inputs, including a forward input, a reverse input, a play control input, and a random input" and "a plurality of inputs, including a forward input, a reverse input, a play control input, and a repeat input"**

| Term | Texas MP3's Construction | Samsung's Proposal[4] |
|---|---|---|
| "a plurality of inputs, including a forward input, a reverse input, a play control input, and a random input" [Claim 1] | more than one selector, including a forward selector, a reverse selector, a play control selector and a random selector | four or more physical switches, including a physical switch for the forward function, a separate physical switch for the reverse function, a separate physical switch for the play control function, and a separate physical switch for the random function |
| "a plurality of inputs, including a forward input, a reverse input, a play control input, and a repeat input" [Claim 15] | more than one selector, including a forward selector, a reverse selector, a play control selector and a repeat selector | four or more physical switches, including a physical switch for the forward function, a separate physical switch for the reverse function, a separate physical switch for the play control function, and a separate physical switch for the repeat function |

**1. Samsung Creates the "Separate" Limitation from Whole Cloth**

The parties' dispute regarding these two terms is largely governed by the construction of "input," discussed above. The "plurality of inputs" terms add the word "plurality" and define certain inputs that are required for the portable audio device, such as a forward and reverse input. Samsung improperly proposes that "plurality" should be construed to require "four or more"

[4] In its Response Brief, Samsung abandons proposed constructions from the Joint Claim Construction Prehearing Statement and offers these new proposals.

inputs that are "separate" from each other. Samsung agrees that well-established case law defines "plurality" to mean "two or more," but argues that in the case of the '417 Patent, "plurality" means "four or more…separate" inputs. Response Brief at 9. Nothing in the claims or specification suggests that "plurality" should be construed in a manner more restrictive than its well-understood meaning.

Moreover, nothing in the claims or specification requires that the plurality of inputs be "separate." Samsung adds this limitation in the same way it previously added the limitation "dedicated" in its initial proposal included in the Joint Claim Construction Prehearing Statement. Samsung abandoned its previous proposal upon realizing that the specification does not define the inputs as "dedicated." Samsung's new proposal fairs no better as the intrinsic record does not require that the inputs be "separate." Samsung's revised construction is improper for the same reasons its original construction was improper. Texas MP3 Opening Brief at 12-13.

Specifically, the '417 specification teaches that "[t]he information selector 300 is realized through <u>various predetermined keys</u> operated by the user, and outputs electrical signals according to the user selections." Exh. A ('417 Patent) at 3:65–4:3 (emphasis added); *see also* 5:49–6:46. Nothing in the intrinsic record requires the "various predetermined keys" to be four or more separate keys. As such, Samsung's proposal should be rejected.

**2. Samsung Misstates the Role of Dependent Claims**

According to Samsung, the dependent claims define what functions could be grouped together. Response Brief at 11. To the contrary, dependent claims provide further limitations on the limitations of the independent claim from which they depend; dependent claims do not define the scope of the independent claim. The requirement specified by dependent claims 4 and 8 that the play control input performs multiple functions indicates that the broader independent claims 1 and 15 include single function inputs *and* multiple function inputs. Texas MP3's application of

the claims has not "been all over the map" as Samsung argues, Response Brief at 13, but instead recognizes that the claims cover devices where the required inputs may be implemented using one or more selectors. The fact that the dependent claims of the '417 Patent do not claim every combination of multiple function and single function inputs does not mean that the broader independent claims are limited to the scope of the dependent claims. Rather, the scope of the independent claims includes the multiple function inputs claimed in the dependent claims as well as other multiple function inputs not claimed in the dependent claims. Thus, the dependent claims support Texas MP3's constructions and not Samsung's proposals.

### C. "stops playing the fourth selection"

| Term | Texas MP3's Construction | Samsung's Proposal |
|---|---|---|
| stops playing the fourth selection | No construction necessary.[5]<br>If a construction is necessary, "ceases playing the fourth selection" | <u>concludes</u> playing the fourth selection |

Samsung asks the Court to construe "stop" to mean "concludes" but provides no support for this proposal within the intrinsic record or the extrinsic evidence. Response Brief at 14–15. Samsung cites no claim language, no part of the specification, no part of the prosecution history, no dictionary definition—nothing to support replacing the word "stop" with the word "concludes." Claim construction is not an opportunity for an infringer to make up different

[5] "Stop" is not a claim term that requires construction. The jury will understand the meaning of the word "stop." If a claim term is simple enough for a lay jury to understand, then "no construction is necessary to clarify a meaning for the jury." *Peer Commc'ns Corp. v. Skype Techs. SA*, No. 6:06CV370, 2008 U.S. Dist. LEXIS 92683, at **9–10 (E.D. Tex. May 29, 2008) (declining to construe term that the jury can understand) (internal citation omitted)). Texas MP3 Opening Brief at 14. In the event that the Court elects to construe "stop", Texas MP3's construction is proper based on the ordinary meaning of the word. Texas MP3 Opening Brief at 14.

substitute words for simple ordinary English words in an attempt to alter its otherwise plain and ordinary meaning. Samsung attempts to justify the need for construing "stop" by looking to the accused devices. Response Brief at 14–15. Lacking any support or justification for its proposal, Samsung's construction should be rejected.

**D. "selected mode of operation"**

| **Term** | **Texas MP3's Construction** | **Samsung's Proposal**[6] |
|---|---|---|
| selected mode of operation | operational mode | operational mode chosen by the user |

Samsung attempts to read a limitation into the term "selected mode of operation" by arguing that "selected" requires that the mode be "chosen by the user." Once again, Samsung's proposal is divorced from the claims and the intrinsic record. Samsung provides absolutely no support whatsoever for its proposal—no support in the claims, no support in the specification, no support in the prosecution history and no support in a dictionary definition. In contrast, Texas MP3's construction is supported by the '417 Patent specification which describes two modes: "an operational mode" and "a standby mode." Exh. A ('417 Patent) at 5:30, 5:43; *see also* Texas MP3 Opening Brief at 9. Further, Texas MP3's construction does not read "selected" out of the claims because the claim is referring to the selected "operational mode" as opposed to the "standby mode." In this context, "selected" refers to which mode and not how the mode is entered into as argued by Samsung. Thus, Texas MP3's construction clarifies the mode specified by the claim without reading in an improper limitation.

[6] In its Response Brief, Samsung abandons its proposed constructions from the Joint Claim Construction Prehearing Statement and offer this new proposal.

## III. INDEFINITENESS OF THE MPEG TERMS

On September 5, 2008, the parties submitted their Joint Claim Construction Prehearing Statement, in compliance with Patent Rule 4-3. Doc. No. 145. Apple and SanDisk sought construction for the two terms in the asserted claims of the ’417 Patent containing the acronym “MPEG.” Samsung neither proposed a construction for the terms brought in dispute by Apple and SanDisk, nor did Samsung suggest that the MPEG terms in the asserted claims of the ’417 Patent rendered the claims indefinite. Accordingly, Texas MP3 addressed the constructions proposed by Apple and SanDisk—which were rendered moot when Texas MP3 and Apple and SanDisk settled their claims against one another. In Samsung’s Response Brief, Samsung changed course.[7] For the first time, Samsung alleged that the MPEG terms in the asserted claims of the ’417 Patent render the claims invalid for indefiniteness. Response Brief at 17–18.

Samsung’s indefiniteness argument is based solely on Samsung’s misreading of the Federal Circuit’s holding in *Honeywell Int’l, Inc. v. Int’l Trade Comm’n*, 341 F.3d 1332 (Fed. Cir. 2003). Samsung’s reliance on the *Honeywell* decision is inexplicable given that the only similarity between the melting point elevation (“MPE”) at issue in *Honeywell* and the MPEG standards in this case is the first three letters of the acronyms. In *Honeywell*, the patentee neglected to define a method for preparing the yarn for thermal analysis to perform the melting point evaluation (MPE). The lack of similarity between this case and the *Honeywell* case is striking: *Honeywell* relates to a process for production of a particular multifilament polyester product called polyethylene terephthalate (“PET”) yarn, whereas the ’417 Patent relates to an MPEG portable sound reproducing system. In any event, the inventors of the ’417 Patent

[7] Texas MP3, thus, moves to strike the “Indefiniteness of the MPEG Terms” portion of Samsung’s Response Brief.

defined a particular method for encoding the data: the standard defined by the Moving Picture Experts Group (MPEG).

In stark contrast to the *Honeywell* case, the Eastern District's holding in *MediaTek, Inc. v. Sanyo Elec. Co.*, 513 F. Supp. 2d 778 (E.D. Tex. 2007) (J. Davis) is highly relevant to the Court's determination of whether the MPEG terms in the asserted claims of the '417 Patent are invalid for indefiniteness. The *MediaTek* court found that the corresponding structure for a claimed function in U.S. Patent No. 5,751,356 patent ("the '356 Patent") was "a video signal encoder including an encoder circuit *utilizing an MPEG standard*, a header creation circuit, and a multiplexer circuit; and equivalents." *Id.* at 781–82 (emphasis added). Just as Apple and SanDisk had sought to do with its proposed constructions of the MPEG terms, the defendant in *MediaTek* sought to limit the structure to "an encoder circuit implementing the MPEG1 or MPEG2 standard . . . because these were the only MPEG standards existing at the time of filing and because the subsequent MPEG4 is too dissimilar to be characterized as part of an evolving standard." *Id.* at 782. The court disagreed, finding that the claim was not so limited, given, in part, that "MPEG was commonly understood to be an evolving standard because it had gone through two versions by the time of filing." *Id.* At no point in the opinion was it even suggested that the MPEG standard in the corresponding structure somehow failed "to notify the public of the patentee's right to exclude." Response Brief at 18.

As was the case for the '356 Patent at issue in *MediaTek*, which was filed on August 6, 1996, the MPEG standard had gone through several versions by the time the inventors filed the '417 Patent claims. The standards body approved MPEG-1 in November 1992, MPEG-2 in November 1994, MPEG-4 version 1 in October 1998, and MPEG-4 version 2 in December

1999[8]—all before the inventors filed the ’417 Patent claims on January 29, 2002 and the first two before the inventors filed the parent application for the ’417 Patent. As the Court held in *MediaTek*, the MPEG standard had gone through several versions and was commonly understood in the art to be an evolving standard at the time the inventors filed the ’417 Patent claims. Therefore, the claims of the ’417 Patent are not a moving target as suggested by Samsung.[9] Response Brief at 17.

## IV. CONCLUSION

Texas MP3’s proposed construction for the disputed terms follows established principles of claim construction, giving effect to the intrinsic record, and adopting constructions consistent with the understanding of those of ordinary skill in the art. Accordingly, Texas MP3 respectfully requests that the Court adopt its proposed construction of the asserted claims as set forth herein and in the claim chart contained in the accompanying Exhibit F.

---

[8] *See* http://www.chiariglione.org/mpeg/who_we_are.htm.

[9] All of the accused devices in the case at bar are capable of reproducing MPEG Layer-3 (“MP3”) encoded data, and that data is compressed according to the MPEG Layer-3 compression standard. At no point in this case, did those devices become “accused” devices by virtue of the MPEG standard changing. Samsung’s hypothetical that the “same device can be free of infringement one day and infringe the next” (Response Brief at 18) is, thus, utterly divorced from reality.

DATED: February 5, 2009

Respectfully submitted,

/s/ Mike McKool

Mike McKool, Jr.
Lead Attorney
Texas State Bar No. 13732100
mmckool@mckoolsmith.com
Robert M. Manley
Texas State Bar No. 00787955
rmanley@mckoolsmith.com
**McKool Smith P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
**McKool Smith P.C.**
104 East Houston Street, Suite 300
P.O. Box O
Marshall, Texas 75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099

T. Gordon White
Texas State Bar No. 21333000
gwhite@mckoolsmith.com
John B. Campbell
Texas State Bar No. 24036314
jcampbell@mckoolsmith.com
Gretchen K. Harting
Texas State Bar No. 24055979
gharting@mckoolsmith.com
**McKool Smith P.C.**
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Robert M. Parker
Texas State Bar No. 15498000
rmparker@pbatyler.com
**Parker, Bunt & Ainsworth, P.C.**
100 E. Ferguson, Suite 1114

Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

**ATTORNEYS FOR PLAINTIFF,
TEXAS MP3 TECHNOLOGIES, LTD.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on this the 5th day of February, 2009. Local Rule CV-5(a)(3)(A).

/s/ John B. Campbell
John B. Campbell